IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Emmie F. Curlett, | ) | C/A No.: 1:11-765-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.      Relevant Background

    A.      Procedural History

On March 27, 2007, Plaintiff filed an application for DIB under the Social Security Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383c. Tr. at 98–99. In her

application, she alleged her disability began on October 28, 2005.  Tr. at 121.  Her application was denied initially and upon reconsideration. Tr. at 58, 68.  On April 29, 2009, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").  Tr. at 24–53.  The ALJ issued an unfavorable decision on August 4, 2009, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 12–23.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–4.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on March 30, 2011.  [Entry #1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 61 years old at the time of the hearing.  Tr. at 28.  She has a college education and her past relevant work ("PRW") was as a sales representative for a printing company and selling newspaper ads.  Tr. at 122, 128.  She alleges she has been unable to work since October 28, 2005.  Tr. at 121.

2.    Medical History

Plaintiff was treated for depression by Christine Lloyd, M.D. from January 20, 2005 to July 13, 2005.  Tr. at 171–78.  Plaintiff's personal history from her initial visit on January 20, 2005 stated that she worked in sales and that the "company closed in June."[1] Tr. at 177.  On February 16, 2005, Dr. Lloyd noted Plaintiff was weepy, upset over

---

[1] The note regarding when Plaintiff's prior employer closed appears to contradict Plaintiff's testimony that the company closed in June 2005.  Tr. at 28.

2

finances, and felt she could not work. Tr. at 176. On June 1, 2005, Dr. Lloyd indicated Plaintiff was weepy over the loss of her cats and was exhibiting a lot of somatic symptoms. Tr. at 173.

On October 28, 2005, Plaintiff told her primary physician E.M. Gilbreth, M.D. that she thought she had spinal stenosis. Tr. at 207. Dr. Gilbreth noted he did not think she had spinal stenosis, but scheduled an MRI "mostly at her request." *Id.* An MRI of Plaintiff's spine on November 2, 2005 documented bilateral degenerative facet joint disease with no significant stenosis. Tr. at 180–81.

Plaintiff began treating with Gregory M. Jones, M.D. on November 22, 2005 for low back pain, hip/groin pain, and leg weakness. Tr. at 214. Plaintiff also reported a history of arthritis in her right thumb joint. *Id.* Dr. Jones scheduled further diagnostic testing, scheduled a trial for facet and SI joint blocks, and prescribed pain medication. Tr. at 215.

On April 5, 2006, Plaintiff reported "excellent benefit" from the facet and SI joint blocks given in December 2005. Tr. at 222. Dr. Jones scheduled her for additional blocks. *Id.* On May 24, 2006, Dr. Jones also scheduled Plaintiff for epidural blocks. Tr. at 220. Plaintiff continued to report improvement in her pain through April 2007 with joint and epidural blocks provided by Dr. Jones. Tr. at 216–21, 274–83. Though helpful for low back pain, Dr. Jones noted they did not alleviate hip/thigh pain. Tr. at 219, 221.

In a Report of Contact dated April 18, 2007, Plaintiff reported she was responsible for household chores such as washing dishes, sweeping, mopping, dusting, and doing the

laundry. Tr. at 133. She stated her husband did a majority of the cooking "because he's a great cook. He's always been the better cook so he's always done a majority of the cooking." *Id.* Plaintiff reported driving herself everywhere she needed to go including to the Fort Sumter Cat Club meetings every other month. *Id.* She described her depression as mild and stated she only took anti-depressants for eight months and had never been hospitalized for emotional problems. *Id.*

On April 19, 2007, state agency consultant Judith Von, PhD, completed a psychiatric evaluation of Plaintiff. Tr. at 245–58. Dr. Von found that Plaintiff had a depressive disorder, but that it was not severe. Tr. at 245, 248. Dr. Von noted Plaintiff had been on anti-depressants for eight months in 2005, but had not been on any psychotropic medications since August 2005. Tr. at 257. Dr. Von further noted that Plaintiff described her history as "very mild chronic depression" for which she had never been hospitalized. *Id.*

On May 16, 2007, Plaintiff reported a flare of her low back and buttock pain and that she had not experienced any benefit from her most recent epidural block, which was unlike the prior excellent relief she had reported. Tr. at 274. Plaintiff reported she was traveling to a cat show and Dr. Jones provided her with an emergent injection. *Id.*

On May 22, 2007, William Cain, M.D., a state agency medical consultant, reviewed Plaintiff's records at the request of the Commissioner and completed a Physical Residual Functional Capacity ("RFC") Assessment form. Tr. at 259–66. Dr. Cain determined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds,

stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. at 260. He also determined that Plaintiff could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and frequently balance. Tr. at 261.

On July 26, 2007, Dr. Jones noted that Plaintiff had recently started to show variable responses to the recent injections, which might indicate a flare of myofascial pain or fibromyalgia. Tr. at 273. He planned to refer Plaintiff for a rheumatology consultation if she failed to show adequate relief to spinal injection therapy. *Id.*

Dr. Jones completed a Treating Physician's Statement on October 2, 2007, in which he opined that Plaintiff could perform light work defined as standing/walking for six hours out of an eight-hour day; sitting off and on for two hours out of an eight-hour day; and lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. Tr. at 351. Dr. Jones also indicated Plaintiff could occasionally bend; needed to frequently change positions and alternate sitting and standing every one to two hours "as needed for comfort"; and should avoid lifting, pushing, or pulling greater than 20 to 30 pounds on a frequent or repetitive basis. Tr. at 352. Dr. Jones noted Plaintiff had significant limitation in her ability to concentrate, remain alert, think clearly or otherwise attend to work tasks to completion because of pain, possible fatigue, and potential side effects of medications. Tr. at 353. He indicated he did not know the degree of limitation and attention to tasks experienced by Plaintiff. *Id.* He opined Plaintiff could return to her past relevant work in outside sales full time as long as the restrictions he noted were

observed. Tr. at 354. He stated she would have fewer than two medical appointments per month during normal working hours. *Id.* He indicated he did not expect significant improvement in Plaintiff's prognosis and that her impairment was permanent. Tr. at 355.

A Report of Contact form dated October 8, 2007 noted Plaintiff reported pain injections provided "fair" relief. Tr. at 146. She stated she could get up and keep going for about 2–3 hours, but then had to rest to ease the pain. *Id.*

Following his contact with Plaintiff on October 8, 2007, state agency consultant Jeffrey Vidic, PhD, opined Plaintiff had a non-severe depressive disorder. Tr. at 284, 287. He noted that Plaintiff was not receiving any treatment for depression and that she had reported her daily activities were limited due to significant pain issues. Tr. at 296.

On October 9, 2007, Joseph Gonzalez, M.D., another state agency medical consultant, reviewed Plaintiff's records at the request of the Commissioner and completed a Physical RFC Assessment form. Tr. at 298–305. Dr. Gonzalez determined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. at 299. He also determined that Plaintiff could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. Tr. at 300.

Dr. Jones noted on October 31, 2007, that Plaintiff had not seen a rheumatologist as he had suggested. Tr. at 320. He again encouraged her to seek evaluation and treatment from a rheumatologist. *Id.*

On April 16, 2008, Dr. Jones noted Plaintiff's epidural on January 8, 2008 had helped approximately 50% of her back pain and 60–70% of her sciatica symptoms for two to two and a half months. Tr. at 321. Plaintiff complained of sleep disturbance, easy fatiguability, chronic headaches, and occasional arthralgias including thumbs, hands, knees, and hips. *Id.* Dr. Jones recommended consult with a rheumatologist if Plaintiff's generalized symptoms continued. *Id.*

Treatment notes from Dr. Jones dated May 28, 2008 state Plaintiff again reported overall good benefit of her low back, hip, and buttock pain and that she was "quite pleased" with her response. Tr. at 324.

On July 23, 2008, Plaintiff reported good relief of her back, buttock, and leg pain with the injections. Tr. at 325. Plaintiff complained of a significant flare-up of right hand pain. *Id.* Dr. Jones agreed to provide additional joint injections for her more severe flare-ups of pain and refilled her medications. *Id.*

When Plaintiff returned to Dr. Jones on September 8, 2008, she reported "good expected benefit" from her most recent injections, but wanted to proceed with additional joint injections as soon as possible. Tr. at 347. Plaintiff stated she received the most complete relief when various components of pain in her back and buttocks were treated together. *Id.*

Plaintiff reported a recent increase in pain on November 10, 2008. Tr. at 342. Plaintiff told Dr. Jones she was not interested in seeing a rheumatologist. *Id.* Dr. Jones

recommended Plaintiff try aerobic and floor exercises. *Id.* Plaintiff continued to refuse to see a rheumatologist on December 17, 2008. Tr. at 341.

On January 21, 2009, Plaintiff presented to Dr. Jones with significant flaring/worsening of neck and shoulder pain. Tr. at 339. She stated she would like to avoid surgical intervention on her neck and wanted to proceed with additional blocks. *Id.*

Treatment notes dated March 30, 2009 state Plaintiff reported good results from recent cervical and lumbar blocks. Tr. at 331. She estimated she had 70 percent relief in her low back and buttock regions. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

At the April 29, 2009 hearing, Plaintiff testified that she has been unemployed since she lost her job in June 2005, when her company closed. Tr. at 28. She described her PRW in outside sales as requiring driving most of the day, calling on accounts, standing/walking for about six hours out of an 8-hour workday, and lifting/carrying of items weighing from 30 to 60 pounds. Tr. at 29–30.

Plaintiff stated she started having back problems in November of 2005 and began seeing Dr. Jones. Tr. at 31. She also had to have colon surgery in January 2006, which resulted in a long recovery period. Tr. at 31–32. Plaintiff reported her back pain had worsened over time. Tr. at 32. She stated the pain had gone into her hips and knees, that she had numbness in her right foot, and that the constant pain caused her to be depressed. *Id.*

Plaintiff described her low back pain and stated she could not stand any period of time in one place. Tr. at 34. Plaintiff stated she could stay on her feet for one to two hours before needing to sit down. Tr. at 35. She testified that because of pain and deterioration in her neck, she could not read or sit at a computer for any time at all and had to support her neck with a pillow if she was in a car for more than 20 to 30 minutes. *Id.* She estimated that she could lift around 15 to 20 pounds, but described flare-ups of her right wrist and thumb joint pain occurring about one week out of the month and causing her to be unable to write or hold a glass of tea. Tr. at 36.

Plaintiff reported that she had difficulty sleeping, which affected her ability to concentrate. Tr. at 38. She estimated she would be unable to concentrate for more than half the time on the job. Tr. at 39.

Plaintiff testified that her pain was improved by spinal injections she received from Dr. Jones every two months. Tr. at 39–40. She estimated the injections provided relief for four to six weeks. Tr. at 39. She stated she also received spinal blocks from Dr. Jones every three months which provided more relief than the injections. Tr. at 40. Plaintiff estimated she would need to be out of work for maybe three days out of a month related to the injections and spinal blocks. Tr. at 41. She stated that the total time required to receive a spinal injection, including travel time, was a half day. Tr. at 42. She estimated that she experienced episodes of increased symptoms about four to five days per month. Tr. at 43.

Plaintiff stated she regularly took prescription narcotic pain medication (Lortab) which caused nausea, dizziness, and sedation. Tr. at 38, 47–48. She also testified that she was depressed with difficulty concentrating, frequent crying spells, and lack of desire to be around other people. Tr. at 45–46. She stated that she had not received treatment for her depression in about three years and stated that her prior treatment was ineffective. Tr. at 45.

Plaintiff testified that her husband did yard work, grocery shopping, cooking, and his own laundry. Tr. at 43. She stated she used the light sweeper, cleaned up a little bit, and did some light laundry. Tr. at 44. She was able to walk to the mailbox and take a short ride to the drugstore or dry cleaners. Tr. at 44–45.

Plaintiff stated she was surprised Dr. Jones thought she could do outside sales. Tr. at 46–47.

2.    The ALJ's Findings

In his August 4, 2009 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.
2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 28, 2005 through her date last insured of December 31, 2008 (20 CFR 404.1571 *et seq.*).
3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spine and the hips (20 CFR 404.1520(c)).
4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work requiring lifting twenty pounds occasionally and ten pounds frequently, standing and/or walking six-hours out of an eight-hour day and sitting the remaining time with occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching, crawling and frequent balancing.

6. Through the date last insured, the claimant was capable of performing past relevant work as a sales representative for a printing company and selling newspaper ads. This work, as usually performed, does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 28, 2005, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(f)).

Tr. at 15–23.

D. Evidence Submitted to the Appeals Council

On request for review, Plaintiff submitted new evidence from Southeastern Spine Institute where she began in May 2009. Tr. at 362–70. On initial examination, John F. Johnson, M.D. noted that Plaintiff had seen Dr. Jones on 54 occasions and had numerous injections with only transient improvement. Tr. at 369. According to Plaintiff, she no longer wanted Dr. Jones to participate in her care because of his rudeness during her most recent office visit. *Id.* On examination, Plaintiff had decreased range of motion, a non-antalgic gait, full strength, intact sensation, and symmetrical reflexes. *Id.* Dr. Johnson recommended an updated lumbar MRI scan. *Id.*

On May 28, 2009, Dr. Johnson noted that Plaintiff's new MRI scan showed multi-level degenerative changes in the cervical spine and severe facet arthropathy and disc degeneration in the lumbar spine. Tr. at 363. Dr. Johnson recommended injections and provided pain medication. *Id.*

Treatment notes dated June 19, 2009 from Dr. Johnson state Plaintiff reported no significant long-term relief from the injections. Tr. at 362. Dr. Johnson observed Plaintiff was quite distraught about the possibility that she may not receive Social Security Disability benefits and commented he thought Plaintiff qualified for disability "given her multiple pathologies." *Id.* He thought Plaintiff would benefit from seeing a chronic pain psychologist and did not think she needed surgery. *Id.*

In denying Plaintiff's request for review, the Appeals Council stated that it had made the records from Southeastern Spine Institute part of the record. Tr. at 4.

## II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) The ALJ failed to obtain vocational evidence or make a function-by-function assessment of Plaintiff's PRW as required by SSR 00-4p and SSR 82-62;

2) The ALJ failed to consider the combined effects of all of Plaintiff's impairments in making his RFC findings in violation of 42 U.S.C. § 423(d)(2)(B) of the Social Security Act;

3) The ALJ failed to call a vocational expert; and

4) The Appeals Council failed to give reasons for the weight given the new evidence submitted at the Appeals Council level.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

### A. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520.

These considerations are sometimes referred to as the "five steps" of the Commissioner's

disability analysis. If a decision regarding disability may be made at any step, no further

inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can

find claimant disabled or not disabled at a step, Commissioner makes determination and

does not go on to the next step.).

A claimant is not disabled within the meaning of the Act if she can return to PRW

as it is customarily performed in the economy or as the claimant actually performed the

work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–

62 (1982). The claimant bears the burden of establishing her inability to work within the

meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing

the inability to return to PRW, the burden shifts to the Commissioner to come forward

with evidence that claimant can perform alternative work and that such work exists in the

regional economy. To satisfy that burden, the Commissioner may obtain testimony from

a VE demonstrating the existence of jobs available in the national economy that claimant

can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden,

the claimant must then establish that she is unable to perform other work. *Hall v. Harris*,

658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137,

146. n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     The ALJ Did Not Comply with SSR 82-62 in Finding Plaintiff Could Return to PRW

Plaintiff argues that the ALJ erred by failing to comply with SSR 82-62 and other applicable regulations in determining she could return to her PRW as a sales representative for a printing company and selling newspaper ads.  [Entry #20 at 8].  The Commissioner argues that the ALJ considered what he was required to consider and properly found Plaintiff had the RFC to return to her PRW as a sales representative as it is customarily performed in the national economy.  [Entry #22 at 10].

SSR 82-62 sets forth the procedures the SSA uses at step four of the sequential analysis when determining whether the claimant's RFC permits her to return to her PRW. The ALJ must consider whether a claimant has the RFC to "meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)," and, if the claimant can return to her PRW, she may be found to be not disabled.  SSR 82-62.  The Ruling provides the following detail regarding what an ALJ is to include in his decision:

> Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

16

The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

*Id.* Further, SSR 82-62 requires the following when the decision-maker determines that a claimant can meet the physical and mental demands of PRW:

The rationale for a disability decision must be written so that a clear picture of the case can be obtained. *The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion.*

\* \* \*

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

1.    A finding of fact as to the individual's RFC.
2.    A finding of fact as to the physical and mental demands of the past job/occupation.
3.    A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

*Id.* (emphasis added).

At step four of the sequential evaluation, the ALJ found that Plaintiff had the RFC to perform the full range of light work requiring lifting twenty pounds occasionally and ten pounds frequently, standing and/or walking six hours out of an eight-hour day and sitting the remaining time with occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching, crawling and frequent balancing. Tr. at 18. The ALJ discussed Plaintiff's claimed impairments and symptoms and considered the extent to

which he found them credible in determining her RFC.  Tr. at 18–22.  He then concluded

his step-four analysis by finding Plaintiff was capable of returning to her PRW.  The

entire portion of his decision regarding Plaintiff's ability to return to her PRW is as

follows:

> **6.**     **Through the date last insured, the claimant was capable of performing past relevant work as a sales representative for a printing company and selling newspaper ads.  This work, as usually performed, does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**
>
> While the claimant described the sales job working for the printing company as requiring lifting up to 60 pounds and the job selling newspaper ads as requiring lifting up to 30 pounds, the job of sales representative as it is normally performed in the national economy is classified in the DOT as light in exertion.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant was able to perform it as normally performed.

Tr. at 22 (emphasis in original).

The undersigned agrees with Plaintiff that the ALJ did not comply with SSR 82-62

in finding she could return to her PRW as a sales representative for a printing company

and selling newspaper ads.  In his decision, the ALJ referenced Plaintiff's testimony that

her PRW required lifting 30–60 pounds.  *Id.*  Under the regulations, such lifting

requirements are considered to be medium (no more than 50 pounds) or heavy (no more

than 100 pounds) work.  20 C.F.R. § 404.1567.  By finding Plaintiff had the RFC to

perform light work (which may require only occasional lifting of up to 20 pounds), Tr. at

18, the ALJ implicitly found Plaintiff could not perform her PRW as she previously

performed it. Such an implicit finding does not comport with the mandate of SSR 82-62 that the ALJ's decision be developed and explained fully.

Because Plaintiff could not return to her PRW as actually performed, the ALJ should have provided "supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." SSR 82-62. Instead, he stated only that "the job of sales representative as it is normally performed in the national economy is classified in the DOT as light in exertion." Tr. at 22. The ALJ failed to provide the DOT number on which he relied. He further failed to make any findings regarding how Plaintiff's PRW would impact her ability to meet the physical and mental requirements of the work as performed in the national economy. The ALJ's general and cursory reference to Plaintiff's PRW as it is normally performed in the national economy is not sufficient to satisfy SSR 82-62's mandate that he provide a written rationale offering a "clear picture of the case" and "show clearly how specific evidence" led him to the conclusion that Plaintiff could perform her PRW as it was generally performed.

The ALJ's general finding that Plaintiff could perform her PRW as it is normally performed without otherwise discussing the physical and mental demands of Plaintiff's PRW is insufficient to satisfy SSR 82-62. Without plainly setting forth the requirements of Plaintiff's PRW as it is generally performed, the ALJ cannot clearly discuss the medical evidence of impairments related to Plaintiff's ability to meet the requirements of her PRW. Accordingly the undersigned recommends remanding this case for further

administrative action.  If, on remand, the ALJ again determines Plaintiff's RFC permits her to perform PRW, the ALJ must specifically discuss the requirements of such PRW as it is performed in the national economy and explain whether her medically-determinable impairments permit her to perform the requirements of her PRW.

2. The ALJ Should Further Consider Plaintiff's Impairments in Combination

Plaintiff also argues that the ALJ failed to consider all of her claimed impairments, including the need to frequently alternate between sitting and standing, side-effects of prescription medication, periodic episodes of thumb and wrist pain causing manipulative limitation, and frequent absenteeism.  [Entry #20 at 16].  She claims that the ALJ erred by failing to consider the severity and limiting effects of those impairments in combination with her other impairments.  *Id.*  The Commissioner counters that the ALJ's separate discussion of Plaintiff's impairments is sufficient to show he adequately considered Plaintiff's impairments in combination.  [Entry #22 at 8].

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp.2 d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments).  The Commissioner is required to "consider the combined effect of all of the individual's impairments

without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In this case, the ALJ specifically addressed numerous impairments alleged by Plaintiff, including thumb and wrist pain and side-effects of prescription medication, in his RFC assessment. Tr. at 21–22. Other than his conclusory statement that "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments," he made no findings regarding the combined effects of Plaintiff's severe and non-severe impairments.

Citing to decisions in other circuits, the Commissioner argues that the ALJ properly considered Plaintiff's impairments in combination by considering them separately. [Entry #22 at 8]. The law in the Fourth Circuit is clear: in-turn consideration of multiple impairments is insufficient. The underlying ALJ decision in *Walker* had included discussion of each of claimants' impairments separately, noting "the effect or noneffect of each." 889 F.2d at 49–50. The Fourth Circuit overturned those ALJ findings because, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." *Id.*

Similarly, the ALJ's fragmented examination of Plaintiff's impairments in this matter is insufficient. The ALJ's preliminary discussion of the step-by-step analysis he is to undertake correctly indicates that he is to determine whether a claimant has an impairment or combination of impairments that is "severe" and that he is to consider "all of the claimant's impairments, including impairments that are not severe" in determining a claimant's RFC. Tr. at 16 (setting out his responsibilities under steps two and four). However, neither this statement of the standard, nor his generic declaration that "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)," Tr. at 18, is sufficient under the law. *See Walker*, 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability."). Nowhere does the ALJ discuss how and whether he considered the combined cumulative effect of these limitations and whether, together, the limitations rendered her disabled. *Id.* (holding ALJ must "adequately explain his or her evaluation of the combined effect of the impairments.").

Therefore, the undersigned recommends this matter be remanded to the ALJ so that he can examine the combined effect of all of Plaintiff's severe and non-severe impairments. In his decision on remand, the ALJ should explain his evaluation of the combined effect of Plaintiff's multiple impairments in accordance with Fourth Circuit law.

As a corollary to her combined impairments argument, Plaintiff argues the ALJ improperly failed to address the impact of her need to alternate between sitting and standing and change positions every one to two hours "as needed for comfort" as opined by Dr. Jones. [Entry #20 at 13; Tr. at 352]. The Commissioner contends Dr. Jones' opinion means Plaintiff would need to adjust from those positions for "very brief durations, such as standing and stretching" and she would, therefore, still be able to perform light work. [Entry #22 at 9].

The ALJ did not address Plaintiff's postural limitations in his decision. The Commissioner's argument regarding the meaning of Dr. Jones' opinion is speculative and constitutes impermissible post-hoc rationalization of the ALJ's decision. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). Because Plaintiff's opined postural limitations may impact her ability to return to PRW, the ALJ should explain on remand either why he does not find the opinion credible or how the postural limitations affect Plaintiff's RFC and her ability to return to PRW.

### 3. Necessity of VE Testimony

Plaintiff next argues that the ALJ's failure to call a VE to provide testimony regarding the vocational implications of Plaintiff's non-exertional impairments is reversible error. [Entry #20 at 17]. Relying on authority from other jurisdictions, the Commissioner argues a VE was not required because this case was decided at step four of

the sequential evaluation process.  [Entry #22 at 11].  Because the Fourth Circuit has not addressed the necessity of a VE on a step-four decision, and in light of the foregoing recommendations to remand this case, the undersigned declines to make a recommendation on this issue.  The undersigned notes, however, that in the interest of issuing a thorough and complete decision on remand, the ALJ may wish to consider the use of a VE.

### 4. Effect of Additional Information Submitted to Appeals Council

In her initial brief, Plaintiff argues the Appeals Council's failure to give any reasons for the weight it gave the new evidence from Dr. Johnson at the Southeastern Spine Institute constitutes reversible error.  [Entry #20 at 18].  The Fourth Circuit has since issued its opinion in *Meyer v. Astrue*, holding it is not necessary for the Appeals Council to state reasons for its decision denying a request for review.  662 F.3d 700, 707 (4th Cir. 2011).  The Fourth Circuit found that when the Appeals Council receives additional evidence and denies review, the issue for the court is whether the ALJ's decision is supported by substantial evidence.  *Id.*  Consequently, Plaintiff's reply brief argues Dr. Johnson's June 2009 opinion that Plaintiff qualified for Social Security disability was new and material evidence which could have changed the ALJ's decision.  [Entry #30 at 14–16].  The Commissioner argues Plaintiff has failed to show the additional evidence would provide a reasonable possibility of changing the ALJ's decision.  [Entry #22 at 12].

The *Meyer* decision bars remand on the basis initially argued by Plaintiff. 662 F.3d at 707. Instead, when faced with new evidence submitted to the Appeals Council, *Meyer* instructs the court to determine whether the ALJ's decision is supported by substantial evidence. *Id.* In this case, such a determination is complicated by the previously-discussed problems with the ALJ's decision. Consequently, the undersigned declines to make a substantive recommendation on the new evidence and recommends the ALJ be instructed to address Dr. Johnson's opinion on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision followed the applicable regulations or is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

June 28, 2012                                      Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).